IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE SAMPLE, | ) | |
|     Petitioner, | ) | |
| | ) | |
|     v. | ) | 07 C 3744 |
| | ) | |
| NEDRA CHANDLER, | ) | |
|     Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Willie Sample's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, the petition is denied.

**I.    Background**

    **A.    Procedural Posture**

Petitioner Willie Sample, identified as prisoner number K74723, is incarcerated at the Dixon Correctional Center, in Dixon, Illinois, where he is in the custody of Warden Nedra Chandler.

        **1.    Direct Proceedings**

Following a 1999 jury trial in the Circuit Court of Cook County, Mr. Sample was convicted of murder, home invasion, and armed robbery in connection with the robbery and murder of Jeremy Price in his home on September 22, 1996. Mr. Sample was subsequently sentenced to consecutive terms of thirty-five, six, and six years of incarceration, respectively. *See People v. Sample*, 326 Ill. App. 3d 914 (1st Dist 2001) (direct appeal) (Dkt. 38, Ex. A).

Mr. Sample appealed his convictions and sentences to the Illinois Appellate Court, where he argued that: (1) "his convictions must be reversed because he was denied his sixth amendment right to confront and cross-examine witnesses when the State elicited hearsay

evidence from police officers that non-testifying co-defendants implicated him in the crimes"; (2) "the circuit court improperly imposed consecutive sentences because [he] did not inflict bodily injury during the commission of the home invasion or armed robbery as required under 730 ILCS § 5/5-8-4(a)"; (3) "the consecutive sentences for the home invasion and armed robbery must be vacated because they are lesser-included offenses of felony murder"; (4) his consecutive sentences were unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (5) he was entitled to 999 days credit for time served rather than the 899 days stated in the mittimus. *Id*. at 916-17. The Illinois Appellate Court affirmed the convictions and consecutive sentences but amended the mittimus to reflect that Mr. Sample had served 999 days. *People v. Sample*, 326 Ill. App. 3d at 931.

Mr. Sample filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, arguing that: (1) his consecutive sentences were improper under Illinois law because the severe bodily injury that mandated such sentences was proximately connected to the murder conviction as opposed to home invasion or armed robbery, as required by 730 ILCS § 5/5-8-4(a); (2) the imposition of consecutive sentences based on the existence of a death was improper because death is "an essential ingredient of the offense" of first degree murder so using death to impose consecutive sentences results in an improper double enhancement; (3) his convictions and consecutive sentences for home invasion and armed robbery were predicated on an unconstitutional presumption that the general verdict of guilty is a guilty verdict on all four counts so either the home invasion or armed robbery conviction and sentence should be vacated; and (4) his consecutive sentences were unconstitutional under *Apprendi*. Dkt. 38, Ex. E (PLA). The Illinois Supreme Court denied the PLA on April 3, 2002. Subsequently, on October 7, 2002,

the Supreme Court of the United States denied Mr. Sample's timely petition for a writ of certiorari. *Sample v. Illinois*, 537 U.S. 910 (2002).

### 2. Collateral Proceedings

Meanwhile, on June 21, 1999, Mr. Sample filed a pro se petition for state postconviction relief pursuant to 725 ILCS § 5/122-1, *et seq*. *See People v. Sample*, No. 96 CR 26466(03), Dkt. 38, Ex. F (postconviction petition) and Ex. G (transcript of proceedings from the denial of postconviction relief). He argued that his trial attorneys were ineffective because: (1) they abandoned him; (2) they did not seek dismissal on speedy trial grounds; (3) they did not seek dismissal under *Gerstein v. Pugh*, 420 U.S. 103 (1975), based on the alleged failure to bring Mr. Sample before a judge within forty-eight hours after his arrest; (4) they did not file a motion to quash his arrest and suppress his statements; and (5) they did not seek a jury instruction on mistaken identity. In addition, he appeared to be raising a sufficiency of the evidence argument as he contends that no weapon was found and no fingerprints placed him at the scene. Finally, he argued that his sentence was excessive given that he was not the shooter.

The postconviction trial court entered an untimely judgment of dismissal. The appellate court summarily remanded based on the trial court's failure to rule within the required time frame. The trial court then again denied the petition on November 16, 2006. *See* Dkt. 38, Ex. G. Mr. Sample appealed and his appointed counsel from the Office of the State Appellate Defender moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *See* Dkt. 38, Ex. H, (*Finley* motion). On June 6, 2008, the Illinois Appellate Court granted counsel leave to withdraw and affirmed the judgment of dismissal. *People v. Sample*, No. 1-06-3656 (1st Dist. Jun. 8, 2008) (unpublished order), Dkt. 38, Ex. I. Although Mr. Sample's amended § 2254

petition is unclear, Dkt. 33 at 5, the respondent states that its counsel confirmed with the Illinois Supreme Court Clerk's Office that there is no record of a PLA from appeal No. 1-06-3656.

On October 15, 2008, Mr. Sample filed a pro se petition for relief from judgment pursuant to 735 ILCS § 5/2-1401. *See* Dkt. 38, Ex. J (petition from relief from judgment). In his filing, Mr. Sample argued: (1) the trial court improperly convicted him of multiple crimes even though he engaged in "one single course of conduct"; (2) he was wrongfully convicted of first and second degree murder in violation of the Illinois Constitution's "Single Subject Rule"; and (3) the trial court's sentencing order did not reflect his three-year term of mandatory supervised release "which is inclusive of his sentence instead of being conclusive of his sentence." *Id*. The trial court denied the petition on December 4, 2008. *See* Dkt. 38, Ex. K (order denying petition for relief from judgment).

On appeal, Mr. Sample's appellate counsel sought to withdraw pursuant to *Finley*. Dkt. 38, Ex. L (*Finley* motion in *People v. Sample*, No. 1-09-0106). On May 14, 2010, the Illinois Appellate Court granted counsel leave to withdraw and affirmed the trial court's judgment. *See* Dkt. 38, Ex. M (unpublished order in *People v. Sample*, No. 1-09-0106). Mr. Sample filed a PLA with the same claims, which was denied on September 29, 2010. *See People v. Sample*, 237 Ill. 2d 583 (Ill. 2010), Dkt. 38, Ex. N.

### 3. § 2254 Petition

Mr. Sample filed a § 2254 petition with this court in July 2007, while his state postconviction appeal was still pending. He also sought to stay the federal proceedings while he exhausted his state court remedies. The court stayed this case pending completion of the state postconviction proceedings. Dkt. 11. Mr. Sample asked the court to lift the stay and allow him to file an amended § 2254 petition after the Illinois Supreme Court denied the PLA in his §

2-1401 proceedings. The court granted this motion. Dkt. 30. Mr. Sample subsequently filed an amended petition, raising the following claims: (1) his consecutive sentences were improper under 730 ILCS § 5/5-8-4(a) because there was no proximate connection between the felony and severe bodily injury and the offenses were all committed as part of a single course of conduct; (2) the consecutive sentences for home invasion and armed robbery were improper as they are lesser included offenses of felony murder; (3) the consecutive sentences are unconstitutional under *Apprendi*; (4) the trial court's sentencing order did not reflect that the three-year term of mandatory supervised release was "included within his aggregate 47 year sentence." Dkt. 33 at 7-8.

B. Facts

The court will presume that the state court's factual determinations are correct for the purposes of habeas review as Mr. Sample has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The court thus adopts the state court's recitation of the facts. As described by the Illinois Appellate Court:

> Willie Sample was convicted by a jury of four counts of first degree murder (including intentional murder and felony-murder), one count of home invasion, and one count of armed robbery. The charges grew out of the robbery and murder of Jeremy Price in his home on September 22, 1996. The verdict returned on the murder count was a general verdict. The judge imposed a 35 year sentence based on the intentional murder count and six years each on the home invasion and armed robbery counts. Defendant's sentences are to run consecutively.
>
> At defendant's trial, Darnell Lewis testified for the State that on September 22, he was in his family's apartment with his step-uncle Jeremy Price. At about 9:45 p.m., Lewis was in his bedroom when he heard Price calling out his name. When Lewis came to his bedroom door he observed Price attempting to push closed the front door of the apartment in an effort to keep someone out. Lewis testified that the front door was about six or seven feet from his bedroom door. A man in a ski mask eventually pushed his way in through the front door and Lewis witnessed his uncle and the man struggling. Shortly thereafter, the men stopped struggling

and Lewis saw that the ski mask had come off his uncle's assailant. Lewis recognized the assailant as a neighborhood resident, Antoine Ashford. According to Lewis, another man then entered the apartment and pulled a gun on his uncle. Lewis testified that this second man looked at Lewis as he entered the apartment.

At about this moment, Ashford pulled a gun on Lewis, who remained in the doorway of his bedroom. As the second assailant was approaching Lewis's uncle, Ashford looked away from Lewis briefly. As he did, Lewis ran back into his bedroom, shut the door, and ran out of the apartment through a window. While Lewis was fleeing, he heard a single gunshot. Lewis asked a neighbor to call the police and an ambulance but did not speak to the police about the incident until 2 days later. Lewis went directly to the hospital where his uncle was taken and found out that his uncle had died. Lewis explained that he had hesitated to speak to the police because of an outstanding warrant.

Investigating detective Ray Kaminski testified that on the day of the shooting, after speaking to members of Lewis's family, he was looking for two men: "Tim" and "Tony." The two were later identified as Timothy Wash and Antoine Ashford. Lewis and Kaminski both testified that on September 24, 1996, Lewis himself spoke with the police. Detective Kaminski testified that Lewis did not give him the name or nickname of the second man to enter the apartment and gave him only a general description. On September 25, Lewis identified Timothy Wash as another area resident whom Lewis had heard was in the lobby of the apartment building during the shooting. At this time, Lewis also identified Antoine Ashford in a police line-up.

On September 24, Detective Kaminski questioned Timothy Wash. In [his] opening statement, the prosecutor told the jury that after questioning Wash, the police were looking for defendant under the alias "Little Rib." The prosecutor went on to say that after interviewing both co-defendants, police were again looking for defendant. During direct examination, the State returned to this point and elicited from Detective Kaminski that after questioning Wash, he continued his search for Ashford and began searching for a man known as "Little Rib." Kaminski brought Ashford in for questioning later that day and re-interviewed Wash. On further direct examination, the State elicited that at this point Kaminski discovered that "Little Rib" was the nickname of defendant Willie Sample. The State went on to elicit similar testimony from another officer assigned to the investigation, Charles Daly. Daly reiterated that after speaking to the co-defendants, he and Kaminski were looking for defendant . . . .

On September 26, defendant was located and brought to the station for questioning. While defendant was at the station, Darnell Lewis identified him out of a line-up as the man who had pointed a gun at Lewis's uncle. Defendant also gave oral statements to both Detective Kaminski and to an assistant State's Attorney. Each testified that defendant told them that he and Ashford had planned to rob Price and that Wash was to stand as lookout. When they arrived at

> Price's apartment, Ashford pretended to be interested in buying marijuana from Price and at some point during the transaction pushed his way into the apartment. Defendant asserted that he then entered the apartment, gun in hand, and went to take the drugs on the couch. Price grabbed defendant's arm and the gun went off, hitting Price in the abdomen. Defendant and Ashford took the drugs and left the apartment. During opening statement, the prosecutor characterized this interview with defendant as one in which the police, having already spoken with his co-defendants, were giving defendant a chance to tell "his side of the story."
>
> The State's forensic pathologist testified that Price died from a single gunshot wound to the abdomen and that there was no evidence of close-range firing. The jury convicted defendant of first degree murder, home invasion, and armed robbery.

*People v. Sample*, 326 Ill. App. 3d at 917-19.

## II. Discussion

### A. Standard of Review

The respondent correctly concedes that Mr. Sample's federal claims are timely and that he pursued all of his available state court remedies. With respect to the merits of his claims, a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's

application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable").

### B. Mr. Sample's Claims

The court will construe all of Mr. Sample's filings broadly given his pro se status. His amended petition and the reply in support focus on the same four issues. The court will thus also focus on these issues.

#### 1. Consecutive Sentences – 730 ILCS § 5/5-8-4(a)

Mr. Sample asserts that his consecutive sentences were improper under 730 ILCS § 5/5-8-4(a), which provides that "[w]hen an Illinois court (i) imposes multiple sentences of imprisonment on a defendant at the same time or (ii) imposes a sentence of imprisonment on a defendant who is already subject to a sentence of imprisonment imposed by an Illinois court, a court of another state, or a federal court, then the sentences shall run concurrently unless otherwise determined by the Illinois court under this Section." According to Mr. Sample, the victim's death was only proximately connected to the murder conviction and all of his offenses were committed as part of a single course of conduct so consecutive sentences were improper.

> The state court summarized Mr. Sample's arguments as follows:
>
> Defendant also argues that Jeremy Price's homicide does not qualify as "the severe bodily injury" required for mandatory consecutive sentencing under 730 ILCS 5/5-8-4. Defendant contends that section 5-8-4 is inapplicable when the triggering offense, a Class 1 or Class X felony, is neither the source of nor proximately connected to the serious bodily harm. Defendant argues that the murder was not proximately related to either the home invasion or the armed robbery . . . .

> We must therefore decide whether defendant was subject to consecutive sentences under section 5-8-4(a) of the Unified Code of Corrections (730 ILCS 5/5-8-4(a) (West 1996)). Section 5-8-4(a) provides in pertinent part:
>
>> The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or a Class 1 felony and the defendant inflicted severe bodily injury * * *.
>
> Defendant argues that the home invasion was completed prior to the infliction of injury. In a similar manner, defendant claims that the armed robbery did not commence until after the shooting and thus the serious bodily injury did not occur during, nor was it proximately connected to, either of the offenses that triggered mandatory consecutive sentencing.

*People v. Sample*, 326 Ill. App. 3d at 925-26.

> The court then concluded:
>
> based on [our review of Illinois state court precedent] and the record in the instant case, including the defendant's oral statement, that the crimes at issue occurred "essentially simultaneously." Defendant admitted that at the outset and throughout the crime, his intent was to rob the victim of drugs. Within the course of a few minutes, defendant, and those for whose actions he was held criminally responsible, entered Price's home by force, threatened him with a weapon, shot him, and stole his drugs. To parse the crimes out into bounded acts would contradict the reality that these crimes were intertwined both temporally and functionally.

*Id*. at 928.

The respondent argues that this claim is based on state law and thus is not cognizable (i.e., properly raised) in a federal habeas proceeding. In a federal habeas proceeding, a federal court may only consider whether a conviction violated the Constitution, laws, or treaties of the United States. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a). Mr. Sample's arguments about state law do not raise an issue of federal law. To the extent that Mr. Sample's arguments can be construed as raising a federal due process claim as, according to Mr. Sample, the consecutive sentences are unfair and excessive, they would still be unavailing.

A sentence may violate a defendant's right to due process if it is outside of the state court's statutory discretion to impose. *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). Mr. Sample does not contend that this is the case, so any due process claim would fail.

### 2. Lesser Included Offenses – Double Jeopardy

Mr. Sample next contends that his consecutive sentences for home invasion and armed robbery were improper as they are lesser included offenses of felony murder. On direct appeal, the Illinois Appellate Court stated:

> Defendant next argues that because the jury was instructed on first degree murder and felony-murder and returned only a general verdict of guilty, defendant's convictions for home invasion and armed robbery should be vacated as lesser included offenses of felony-murder. As the defendant concedes, the Illinois supreme court has addressed this issue and reached a contrary conclusion.
>
> In *People v. Cardona*, 158 Ill. 2d 403 (1994), the defendant was charged with both intentional and felony-murder. The defendant argued that a general verdict did not support the inference that the jury found him guilty of intentional murder and thus that the trial court's sentence based on the higher charge was in error. The *Cardona* court noted that "a general finding of guilty is presumed to be based on any good count in the indictment to which the proof is applicable." *Cardona*, 158 Ill. 2d at 411. The *Cardona* court went on to re-affirm that "it is well established in Illinois that where an indictment contains several counts arising out of a single transaction and a general verdict is returned, the effect is that the defendant is guilty as charged in each count to which the proof is applicable." *Cardona*, 158 Ill. 2d at 411. This has become known as the "one good count rule." In addition, "where multiple convictions are obtained for offenses arising out of a single act, sentence is imposed on the most serious offense." *Cardona*, 158 Ill. 2d at 411.
>
> In this case, defendant was charged with and the jury was instructed on both intentional murder and felony murder. Defense counsel did not object to the submission of a general verdict form nor is there any evidence in the record that counsel tendered alternative verdict forms requiring the jury to find him guilty or not guilty of felony-murder. The State's proof was applicable to both charges and the jury returned a general verdict of guilty of first degree murder. The most serious of the first degree murder charges in this case is the one with the most culpable mental state: intentional murder. *Cardona*, 158 Ill. 2d at 411. Under *Cardona*, therefore, this charge was the appropriate basis for sentencing.

*People v. Sample*, 326 Ill. App. 3d at 928-29.

This passage illuminates Mr. Sample's arguments, but does not directly address the federal constitutional claim of double jeopardy that Mr. Sample raised in his state court proceedings. See Dkt. 38, Ex. E at 12-15 (PLA on direct appeal). The court will thus consider this claim de novo. *See Johnson v. Thurmer*, 624 F.3d 786, 791 (7th Cir. 2010) (applying de novo standard of review when state court did not reach federal constitutional claim on the merits).

Mr. Sample was found guilty of "four counts of first degree murder (including intentional murder and felony-murder), one count of home invasion, and one count of armed robbery." *People v. Sample*, 326 Ill. App. 3d at 917. According to Mr. Sample, sentencing him for murder as well as home invasion and armed robbery violates the Fifth Amendment because it punishes him for first degree murder as well as two lesser included offenses. He then contends that the general verdict should be vacated because there is no way to tell if it was based on either of the two improper counts.

The fatal flaw with this argument is that nothing indicates that the intentional murder count was based on the commission of a lesser included offense. *See People v. Calhoun*, 404 Ill. App. 3d 362, 378 (1st Dist. 2010). Moreover, home invasion and armed robbery are not lesser included offenses of intentional murder so Mr. Sample's argument is simply incorrect. *See People v. Adkins*, 239 Ill. 2d 1, 35 (Ill. 2010), *citing People v. McLaurin*, 184 Ill. 2d 58 (Ill. 1998) (home invasion is not a lesser-included offense of intentional murder); *People v. Griffin*, 375 Ill. App. 3d 564, 571-72 (1st Dist. 2007) ("although armed robbery is a lesser-included offense of felony murder, it is not a lesser-included offense of intentional murder"); *see also People v. Moore*, 397 Ill. App. 3d 555, 565 (1st Dist. 2009) ("Although defendant is correct that armed robbery and home invasion are lesser included offenses of felony murder, neither is a

lesser included offense of intentional murder"), *citing People v. Sample*, 326 Ill. App. 3d at 929 (Mr. Sample's direct appeal). Accordingly, Mr. Sample's double jeopardy claim must fail.

      **3.** *Apprendi*

Third, Mr. Sample attacks his consecutive sentences under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The court begins with the state court's analysis:

> In *Apprendi*, a New Jersey hate crime statute allowed the sentencing judge to increase a sentence beyond the statutory maximum if the judge found, by a preponderance of the evidence, that the defendant committed the crime to intimidate the victim on the basis of race. The *Apprendi* court invalidated this provision of the law, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Defendant argues that consecutive sentences based on a judicial "finding" that severe bodily injury was inflicted during the commission of a felony is contrary to *Apprendi*.
>
> In a decision issued subsequent to the filing of briefs in this case, the Illinois Supreme Court addressed this precise argument. *People v. Carney*, 196 Ill. 2d 518 (Ill. 2001). The *Carney* court began by noting that "[w]hile, undeniably, a defendant who receives consecutive sentences will serve a longer period of imprisonment than a defendant who receives identical concurrent sentences, this fact alone does not make *Apprendi* applicable." *Carney*, 196 Ill. 2d at 531. The court reasoned that section 5-8-4 affects only the "manner" in which a defendant must serve discrete sentences for discrete offenses and thus does not expose defendants to punishment that exceeds the statutory maximum. *Carney*, 196 Ill. 2d at 532-32. According to the court, consecutive sentences have long been considered separate sentences under Illinois law. When considering whether a given sentence improperly increases the penalty beyond the statutory maximum under *Apprendi*, therefore, each sentence must be examined individually, even if the sentences are to run consecutively. As the court succinctly concluded: "[c]onsecutive sentences, taken together, do not constitute a 'range of penalties' to which *Apprendi* applies." *Carney*, 196 Ill. 2d at 534-35.
>
> Because defendant in the case at bar was not sentenced to more than the statutory maximum for any one of the offenses for which he was convicted, we will uphold his consecutive sentences under *Carney*.

*People v. Sample*, 326 Ill. App. 3d at 929-30.

The court cannot find that the state court's analysis of the *Apprendi* issue is either contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court because, as noted by the respondent, the United States Supreme Court has held that the Sixth Amendment allows sentencing judges to make findings relating to the imposition of concurrent sentences. *See Oregon v. Ice*, 555 U.S. 160, 163-64 (2009). Mr. Sample is, therefore, not entitled to relief with respect to his *Apprendi* claim.

### 4. Supervised Release

Finally, Mr. Sample argues that the trial court's sentencing order did not reflect that the three-year term of mandatory supervised release was "included within his aggregate 47 year sentence." Dkt. 33 at 7-8. He also asserts that he should not be required to serve a term of supervised release as the sentencing judge did not admonish him about supervised release during the sentencing.

As discussed above, not all claims are cognizable for purposes of federal habeas review. Mr. Sample appears to be contending that the imposition of a term of supervised release violates state law. This is a non-starter for federal habeas corpus purposes as this court may only consider alleged violations of federal law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (state law violations provide no basis for federal habeas relief). Moreover, Mr. Sample "does not and cannot claim that his sentence exceeded the sentencing range of a valid state statute" so "the severity of his sentence cannot form the basis of federal habeas relief." *U.S. ex rel. Cleveland v. Cox*, No. 08 C 4068, 2009 WL 196327, at *7 (N.D. Ill. Jan. 27, 2009). Similarly, Mr. Sample does not contend that the trial court lacked jurisdiction to require him to serve a term of supervised release or that the trial court committed a constitutional error when imposing a term

of supervised release in a way that made his sentence fundamentally unfair. *Id*. Thus, any sentencing claim is beyond the province of federal habeas review.

## C. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c)(2): "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

For the reasons stated in this order, the court finds that Mr. Sample has not made a substantial showing of the denial of a constitutional right as he has not demonstrated "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently or that his petition adequately shows a sufficient chance of the denial of a constitutional right that he deserves encouragement to proceed further." *Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Accordingly, the court declines to issue a certificate of appealability.

## III.     Conclusion

For the above reasons, Mr. Sample's amended §2254 petition is denied and the court declines to issue a certificate of appealability.  The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.


DATE: August 23, 2012            _____
                                 Blanche M. Manning
                                 United States District Court Judge